**In re Darron D. SCOTT, Debtor.**

**Darron D. Scott, Plaintiff,**

**v.**

**Midwestern Training Center, Inc., Defendant/Counterclaimant.**

**Bankruptcy No. 01–50281–293. Adversary No. 01–4317.**

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

May 31, 2002.

Ross H. Briggs, St. Louis, MO, for debtor.

James S. Cole, Riezman Berger P.C., St. Louis, MO, for Midwestern Training Center.

John V. LaBarge, Jr., St. Louis, MO, Chapter 7 Trustee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

Creditor Midwestern Training Center, Inc. ("Midwestern") filed a counterclaim in this adversary proceeding asserting that the loan it made to Debtor Darron D. Scott is not dischargeable under 11 U.S.C. § 523(a)(8). The loan was made to fund Scott's participation in Midwestern's truck driving course. Section 523(a)(8) is intended to prevent, in part, the discharge of educational loans made under any program funded by a governmental unit or by a nonprofit institution. Section 523(a)(8) does not apply to educational loans made under a program wholly funded by for-profit entities. After a trial of the matter, the Court finds that Debtor's loan is dischargeable because it was made under a program wholly funded by Midwestern, a for-profit business.

## JURISDICTION AND VENUE

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(I), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409.

## PROCEDURAL BACKGROUND

On September 18, 2001, Debtor Darron D. Scott filed a voluntary petition seeking relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330. Trustee filed a report of no distribution on October 4, 2001. Debtor received an order of discharge on January 1, 2002.

On October 16, 2001, Debtor filed an adversary complaint against Midwestern Training Centers, Inc. Midwestern had loaned Debtor money to attend Midwestern's truck driving school. When Debtor failed to repay the loan, Midwestern obtained a state court judgment against Debtor. Midwestern garnished Debtor's wages in an effort to satisfy its judgment. Debtor's adversary complaint was a preferential transfer action and sought the return of wages that were garnished by Midwestern within ninety days of Debtor's bankruptcy filing.

Midwestern filed a counterclaim asserting that its loan was an educational loan and not dischargeable in bankruptcy under 11 U.S.C. § 523(a)(8). Midwestern and Debtor settled the preferential transfer action. Midwestern's counterclaim on dischargeability of the loan was tried on February 22, 2002. The case was taken under submission and the parties were allowed to file post trial briefs.

472

## FACTUAL FINDINGS

The Court finds the following facts from the court file and from the testimony and evidence submitted at the trial of this matter:

1. Midwestern Training Centers, Inc. provides truck driver instruction and training. Midwestern is a for-profit business.

2. On January 20, 1999, Debtor Darron Scott enrolled in a course of study and training at Midwestern in order to become qualified to operate commercial semi-tractor truck units in interstate commerce.

3. On January 20, 1999, Scott executed a "Retail Installment Contract" to finance the cost of the training program. Midwestern provided the loan to Scott in the amount of $4,200.00. The loan was fully funded by Midwestern.

4. Scott completed the three week course of study and training at Midwestern.

5. Scott failed to repay the loan. Midwestern sued Scott for default on the loan. On September 12, 2000, Midwestern received a default judgment from the Associate Judge Division of the Circuit Court of the City of St. Louis, Missouri. The judgment was in the amount of $6,072.44.

6. In an effort to satisfy its judgment, Midwestern garnished Scott's wages.

7. Scott filed for relief under Chapter 7 of the United States Bankruptcy Code on September 24, 2001.

8. On October 16, 2001, Scott filed an adversary proceeding against Midwestern. The complaint brought a preferential transfer action against Midwestern seeking the return of any of Scott's wages garnished within the ninety days preceding his bankruptcy filing.

9. On January 28, 2002, Midwestern filed a counterclaim asserting that its loan was an educational loan and not dischargeable in bankruptcy under 11 U.S.C. § 523(a)(8). The balance of the loan on the date the counterclaim was filed was $5,589.69.

10. Midwestern and Scott settled the preferential transfer action.

## DISCUSSION

Midwestern made a loan to Scott to pay for a truck driving course provided by Midwestern. Jeffery Fischer, Midwestern's vice president, testified at trial that Midwestern is a for-profit business. He stated that the loan made to Scott was not made, insured or guaranteed by a governmental unit nor was it made under any program funded by a governmental unit or by a nonprofit institution. He testified further that the truck driver training course spanned three weeks and involved classroom work, written tests, and over the road field training. The goal of the course was to qualify individuals to operate commercial semi-tractor truck units in interstate commerce.

Midwestern asserts that its loan to Scott was for an educational benefit and is not dischargeable under 11 U.S.C. § 523(a)(8). That section of the Bankruptcy Code excepts from discharge certain loans made to pay for an educational benefit.

Scott argues that Midwestern's loan is not excepted from discharge under section 523(a)(8) for two reasons. First, Midwestern's truck driving course is not the type of educational benefit contemplated by section 523(a)(8) for which a loan may be excepted from discharge. Second, only educational loans made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution are excepted from discharge under section 523(a)(8). Midwestern is a for-profit business. The loan it extended to Scott was not made under any program

funded by a governmental unit or by a nonprofit institution. Accordingly, Scott argues that Midwestern's loan does not qualify for protection from discharge under section 523(a)(8).

The first issue is whether Midwestern's truck driving course is the type of educational benefit contemplated by section 523(a)(8). This question need not be definitively answered in this case because of the Court's ruling on Scott's second argument. The Court will assume for this case that Midwestern's truck driving course is an educational benefit covered by section 523(a)(8).[1]

The key issue of this case is whether Midwestern's loan, for an educational benefit, may be excepted from discharge under section 523(a)(8) even though it was made under a program wholly funded by a for-profit business. Section 523(a)(8) states that a discharge under section 727 does not discharge an individual from any debt:

> "for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents."

11 U.S.C. § 523(a)(8).

■ In sum, section 523(a)(8) excepts three categories of debt concerning educational benefits from discharge: (1) overpayments or loans made, insured or guaranteed by a governmental unit; (2) loans made under any program funded in whole or in part by a governmental unit or nonprofit institution; and (3) obligations to repay funds received as an educational benefit, scholarship or stipend.

Jeffery Fischer, Midwestern's vice president, testified that the loan was not made, insured, or guaranteed by a governmental unit. So the first category of debt in section 523(a)(8) is not applicable in this case.

Fischer also testified that the loan was not made under any program funded by a governmental unit or by a nonprofit institution. It was, in fact, made by Midwestern, a for-profit business, under Midwestern's financing program which was wholly funded by itself, a for-profit institution. Therefore, Midwestern's loan does not fall into the second category of exception from discharge, that is, a loan made under a program funded in whole or in part by a governmental unit or nonprofit institution.

■ Midwestern does not argue that its loan is excepted from discharge under the first two categories of section 523(a)(8). Rather, Midwestern contends that its loan should be exempt from discharge under the third category; "obligations to repay funds received as an educational benefit, scholarship or stipend." Midwestern does not assert that its loan was a scholarship or stipend. It claims that its loan is an obligation to repay funds received as an educational benefit. Midwestern argues that this section extends the exception to

---

**1.** The Bankruptcy Code does not define the meaning of "educational benefit" as that term is used in section 523(a)(8). Given the term's broad meaning, the Court has already held it is not limited to loans used to fund higher or post secondary education. *In re Dressel,* 212 B.R. 611 (Bankr.E.D.Mo.1997)(loan made for sheet metal apprenticeship program nondischargeable under section 523(a)(8)). The Court does not see why Midwestern's truck driving course, composed of classroom and field training, should not qualify as an educational benefit.

discharge to an educational loan made by any entity, whether it is a governmental, a nonprofit or a for-profit institution.

The courts that have addressed this issue have all rejected Midwestern's argument. *See In re Meinhart,* 211 B.R. 750 (Bankr.D.Colo.1997)(educational loan made by grandparents not excepted from discharge under the "obligations to repay funds received as an educational benefit, scholarship or stipend" provision); *Jones v. H & W Recruiting Enterprises, Inc. (In re Jones),* 242 B.R. 441 (Bankr.W.D.Tenn.1999)(educational loan made under for-profit program for truck driving school tuition was not excepted from discharge under the "obligations to repay funds received as an educational benefit, scholarship or stipend" provision); *United Resource Systems, Inc. v. Meinhart (In re Meinhart),* 211 B.R. 750 (Bankr.D.Colo.1997)(same); *McClure v. Action Career Training (In re McClure),* 210 B.R. 985 (Bankr.N.D.Tex.1997)(same).

The cases in *Jones, Meinhart,* and *McClure* all concern loans made to fund truck driver training courses. The creditors who made the loans in these cases were for-profit entities which made the loans under strictly for-profit programs. The creditors all claimed that their loans were excepted from discharge under the "obligation to repay funds received as an educational benefit, scholarship or stipend" provision of section 523(a)(8).

Midwestern argues that the plain meaning of this provision excepts from discharge any loan made which funded an educational benefit, including loans made under wholly for-profit programs. It equates the term "loan" with the "obligation to repay funds received" phrase of the statute. Midwestern asserts that its interpretation of the provision follows from the plain meaning of the words used in the statute. It asserts that any construction to the contrary would render this provision superfluous and meaningless.

 The court in *Meinhart* succinctly discussed why the argument put forth by Midwestern is flawed. It is true that a statute should not be construed in a way that renders phrases meaningless, redundant, or superfluous. 211 B.R. at 753 (citing *Rake v. Wade,* 508 U.S. 464, 471, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993)). However, when interpreting a statute a court is to look not only to a single sentence or member of a sentence but to the provisions of the whole law. *Id.* (quotations omitted)(citing *Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986)).

If the third provision of section 523(a)(8) were interpreted to mean that all educational loans were excepted from discharge then the first two categories (extending an exception to only governmental entities and nonprofit institutions) would certainly be rendered meaningless and superfluous. *Id.* The third category would subsume the first two provisions and make them completely unnecessary. Such an interpretation is contrary to statutory interpretation and to common sense.

The third provision clearly has a plain meaning. It does not need to be construed broadly to except all loans for educational benefits from discharge. The provision grants protection to "obligations to repay funds received as an educational benefit." An example of such an obligation would be for funds provided as grants that must be repaid only under certain conditions (like the failure of a medical student grant recipient to practice in a physician shortage area after graduation).

Midwestern's interpretation of this provision is not mandated by the plain meaning of the words used by Congress. To the contrary, Midwestern's interpretation

would make the majority of the provisions of the statute superfluous. Such an interpretation cannot stand.

Accordingly, the court finds that Scott's loan obligation to Midwestern is dischargeable and not subject to the exception from discharge under section 523(a)(8).

An Order consistent with this Memorandum Opinion will be entered this date.